Judge STUCKY
delivered the opinion of the Court.
Article 12 of the Uniform Code of Military Justice (UCMJ) provides that: “No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces.” 10 U.S.C. § 812 (2012). The Judge Advocate General of the Ah’ Force certified to this Court the question of whether Article 12, UCMJ, applies to members of the armed forces confined in a state or federal facility within the continental limits of the United States.[1] We also granted Senior Arman (SrA) McPherson’s petition asking whether a confinee must exhaust administrative remedies before being entitled to relief under Aticle 12. Because Aticle 12 is clear on its face, we hold that it applies to military members confined in civilian state or federal facilities in the United States. We further hold that under Aticle 12, a confinee must exhaust his administrative remedies prior to judicial intervention.
I. Posture
A military judge sitting as a special court-martial convicted SrA McPherson, pursuant to his pleas, of being absent without leave and distributing drugs. Afieles 86 and 112a, UCMJ, 10 U.S.C. §§ 886, 912a (2012). The military judge also convicted him, contrary to his pleas, of fraudulent enlistment; another specification of being absent without leave; making a false official statement; wrongfully possessing and using drugs; and incapacitating himself for the performance of duties. Afieles 83, 86,107,112a, and 134, UCMJ, 10 U.S.C. §§ 883, 886, 907, 912a, 934 (2012). The convening authority approved the sentence that the military judge adjudged: a bad-eonduet discharge, confinement for eight months, reduction to the lowest enlisted grade, and a reprimand. The United States Air Force Court of Criminal Appeals (CCA) affirmed. United States v. McPherson, 72 M.J. 862 (A.F.Ct.Crim.App.2013) (reconsideration and reconsideration en banc denied on Jan. 6, 2014).
II. Background
After his conviction and sentence, SrA McPherson was initially confined for fifteen days at the Elmore County Detention Facility in Idaho. Id. at 869. SrA McPherson alleged to the CCA and before this Court that “for eight of those days, he was housed in an open bay with a foreign national known *395 only as ‘The Mexican,’ who was awaiting deportation hearings.” Id. SrA McPherson and “The Mexican” played card games together every night while in confinement. Id.
SrA McPherson did not seek clemency from the convening authority for being confined in immediate association with an alleged foreign national, nor did he notify anyone at the confinement facility or in his chain of command, even after he was transferred to the Naval Consolidated Brig Miramar. Id. He first raised the issue in his appeal to the CCA. Id.
In its decision, the CCA did not specifically address whether Article 12, UCMJ, applies to military members confined in a state or federal facility within the United States. Rather, it evaluated whether relief for an alleged Article 12 violation is available where a confinee did not exhaust administrative remedies. Id. at 867-70. The CCA found “no ‘unusual or egregious circumstance’ to excuse [SrA McPherson’s] failure to pursue available administrative remedies,” and declined to grant relief. Id.
On December 9, 2013, the Government filed a motion for reconsideration and reconsideration en banc, alleging that, by employing an exhaustion of remedies analysis, the CCA had “implicitly established as a matter of law in the Air Force that Article 12 applies to civilian confinement facilities.” The CCA summarily denied the motion on January 6, 2014. The ease is now before us on the Judge Advocate General’s certification.
III. Certified Issue
“Interpreting Article 12, UCMJ, is an issue of statutory interpretation, which we review de novo.” United States v. Wise, 64 M.J. 468, 473 (C.A.A.F.2007).
As in all statutory construction eases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is-unambiguous and the statutory scheme is coherent and consistent.
Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (citations and internal quotation marks omitted). Whether the statutory language is ambiguous is determined “by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).
Here, the text of Article 12 is plain on its face: “No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces.” There is no geographic limitation by its terms, so this Court will not read any such limitation into the plain language of the statute. Rather, we “must presume that a legislature says in a statute what it means and means in a statute what it says there.” Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Article 12 applies to military members in state or federal confinement facilities without geographic limitation. “When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.” Id. at 254, 112 S.Ct. 1146 (citations and internal quotation marks omitted).
The Government claims that Article 12 conflicts with Article 58, UCMJ, 10 U.S.C. § 858 (2012), necessitating additional statutory interpretation. Article 58 provides:
[A] sentence of confinement adjudged by a court-martial ... may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use. Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States....
Emphasis added.
“ ‘When a statute is a part of a larger Act ... the starting point for ascertaining legislative intent is to look to other sections *396 of the Act in pari materia with the statute under review.’” United States v. Diaz, 69 M.J. 127, 133 (C.A.A.F.2010) (alteration in original) (quoting United States v. McGuinness, 35 M.J. 149, 153 (C.M.A.1992)); see also United Sav. Ass’n v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (stating that statutory construction is a “holistic endeav- or”). Both Article 12 and Article 58 address treatment of military members in confinement: Article 58 requires all eonfinees to be treated the same, and Article 12 requires that no military member may be confined in immediate association with a foreign national. Arguing that Article 58’s “same treatment” provision is more specific than Article 12, the Government asks us to apply the rule of statutory interpretation that, “[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act,” Congress “intentionally and purposely” intended “the disparate inclusion or exclusion.” Bates v. United States, 522 U.S. 23, 29-30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)) (internal quotation marks omitted). The Government argues this rule means that the specificity of Article 58 must apply to Article 12 too.
But Article 58 is not more specific than Article 12, nor are the two statutes in conflict. Military eonfinees can — and must— receive treatment equal to civilians confined in the same institution, while being confined separately from foreign nationals. This Court has no license to generate a statutory conflict where none exists or to construe statutes in a way that “undercut[s] the clearly expressed intent of Congress.” United States v. Bartlett, 66 M.J. 426, 428 (C.A.A.F.2008). Article 12 and Article 58 were passed at the same time, and read in pari materia, they both apply without conflict to military members confined in state or federal institutions in the United States.[2]
The Government responds that this holding generates “absurd results” for confinement conditions. See, e.g., Wilson, 73 M.J. at 534 (noting that the appellant was placed in solitary confinement-to avoid a violation of Article 12 because the county jail where he was confined “ha[d] no system of identifying foreign nationals”). A confinee subject to solitary confinement in these circumstances might then raise a claim of a violation of Article 55, UCMJ, 10 U.S.C. § 855 (2012) (prohibiting cruel or unusual punishment).
The methods by which civilian facilities may enforce Article 12 are matters of policy and are not before this Court. Since solitary confinement is certainly not the sole method for implementing the requirements of the statute, the plain language of Article 12 does not dictate absurd results. Any such decisions come from fiscal decisions made by the military departments, not from the operation of the statute.
IV. Granted Issue
In his petition, SrA McPherson argues that the CCA erred in holding that a confinee must exhaust administrative remedies before receiving any relief for a violation of Article 12, UCMJ.[3] We disagree and affirm the holding of the court below.
The CCA relied on Wise, 64 M.J. at 471, to hold that exhaustion of administrative remedies is a prerequisite to relief under Article 12. McPherson, 72 M.J. at 869. In Wise, this Court addressed an appellant’s claim of being confined with enemy prisoners of war in Iraq in violation of both Article 12 and Article 55, UCMJ. 64 M.J. at 470. The Court observed that a prisoner must exhaust administrative remedies in his detention fa *397 cility before he can “invok[e] judicial intervention to redress concerns regarding post-trial confinement conditions,” absent “some unusual or egregious circumstance.” Id. at 469, 471 (citing United States v. White, 54 M.J. 469, 472 (C.A.A.F.2001); United States v. Miller, 46 M.J. 248, 250 (C.A.A.F.1997)). The Court’s analysis, though, was in an Article 55 context. Both White and Miller are Article 55 cases; neither mentions Article 12. While the Wise Court did mention and analyze Article 12 elsewhere in the opinion, we did not clarify whether the exhaustion-of-administrative-remedies analysis sprang from Article 12 or solely from Article 55. We now hold that a eonfinee must exhaust administrative remedies before judicial intervention for an Article 12 violation claim.
Article 12 regulates confinement conditions in a manner similar to Article 55’s limitations on permissible confinement conditions. See United States v. Pena, 64 M.J. 259, 265 (C.A.A.F.2007) (taking note of Article 12’s requirements in the context of discussing Article 55’s prohibition of “cruel or unusual punishment”); United States v. Ellsey, 16 C.M.A. 455, 458, 37 C.M.R. 75, 78 (1966) (listing Article 12’s provisions among the 'requirements for confinement conditions); cf. United States v. Palmiter, 20 M.J. 90, 96 (C.M.A.1985) (indicating that Article 12 is applicable to pretrial confinement, and “commingling” under Article 12 is not punishment in and of itself).
Article 55 requires exhaustion of administrative remedies. United States v. Coffey, 38 M.J. 290, 291 (C.M.A.1993) (“While Article 55 ... prohibits [cruel or unusual] punishment, and under appropriate conditions we might exercise our power to issue an extraordinary writ, a prisoner must seek administrative relief prior to invoking judicial intervention.”). Consistent with Wise, we find that this exhaustion-of-remedies requirement is applicable under Article 12 as well.
There are practical and policy reasons to apply this requirement to Article 12 relief. This administrative exhaustion requirement furthers two related goals: (1) the “resolution of grievances at the lowest possible level” with “prompt amelioration” of the complaint while the prisoner suffers the condition, and (2) the development of an adequate record to aid appellate review. Wise, 64 M.J. at 471 (citing Miller, 46 M.J. at 250).
This case demonstrates why these goals are so important. SrA McPherson did not raise this issue to local confinement officials or to anyone in his chain of command. See id. at 472. During this time, though, he did learn of a process for filing complaints and also complained to his first sergeant that he was not receiving his prescription medications. SrA McPherson did not raise the Article 12 issue in his clemency submissions to the convening authority, nor did he file a grievance with the confinement facility or make an Article 138, UCMJ, 10 U.S.C. § 938 (2012), complaint. Since SrA McPherson did not complain of this condition until appeal, there are no details of his confinement conditions for an appellate court to review: we know only that he alleges he was confined with a man he calls “The Mexican” who said he was awaiting deportation proceedings. “[T]he Air Force was unable to investigate the claims, make a record of it for review, or have the opportunity to immediately correct the situation, as warranted.” McPherson, 72 M.J. at 869.
Wise is still good law. To obtain relief for an Article 12 violation, a eonfinee must exhaust available administrative remedies absent unusual or egregious circumstances.- In this ease, SrA McPherson con-eededly did not exhaust his administrative remedies. The CCA did not err in finding no “unusual or egregious circumstance” to excuse his failure to exhaust remedies. Thus, SrA McPherson is not entitled to relief under Article 12.
V. Decision
The judgment of the United States Air Force Court of Criminal Appeals is affirmed.

. The certified issue is the same as the issue we specified for the United States Air Force Court of Criminal Appeals to consider on remand in United States v. Wilson, 72 M.J. 447 (C.A.A.F.2013) (summary disposition). In that case, the lower court held that Article 12, UCMJ, does apply in such circumstances. United States v. Wilson, 73 M.J. 529, 531, 533 (A.F.Ct.Crim.App.2014). The Air Force Judge Advocate General certified the same issue to this Court in both cases, and we considered them together.

. We therefore disagree with the United States Court of Appeals for the District of Columbia Circuit, which held that "Article 58 trumps Article 12." Webber v. Bureau of Prisons, No. 02-5113, 2002 U.S.App. LEXIS 18796, at *2, 2002 WL 31045957, at *1 (D.C.Cir. Sept. 12, 2002) (per curiam). The D.C. Circuit found no prece-dential value in this opinion, however, and it has no precedential authority for this Court either. See Circuit Rules of the United States Court of Appeals for the District of Columbia, Circuit Rule 36(e)(2).

. SrA McPherson asserts that there is a split among service courts on this issue. However, he cites no cases from the other services in support of this point and it appears that none of the other service courts has even addressed it.