UNITED STATES, Appellee

v.

Brian R. BRAMER, Airman, U.S. Naval Reserve, Appellant.

No. 95–0722.
Crim.App. No. 94 00826.

U.S. Court of Appeals for the Armed Forces.

Argued June 4, 1996.

Decided Sept. 30, 1996.

For Appellant: *Kevin J. Barry* (argued); *Lieutenant Gerard Wm. Wittstadt, Jr.,* JAGC, USNR (on brief); *Lieutenant Commander Eric C. Price,* JAGC, USN, and *Lieutenant Bradford A. Bleier,* JAGC, USN.

For Appellee: *Lieutenant John R. Livingston, Jr.,* JAGC, USN (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief).

*Opinion of the Court*

COX, Chief Judge:

The facts of this case are succinctly related in the decision below. 43 MJ 538 (1995). Briefly summarized, appellant robbed a McDonald's Restaurant in Mount Vernon, Washington. He was arrested and held in the civilian jail without bail pending disposition of the charges. While there, the Navy preferred charges against him for several armed robberies committed in Canada. After he was convicted and sentenced in the state of Washington, and while he was serving his sentence for the McDonald's robbery, he was turned over to the Navy pursuant to a detainer which had been filed with the state authorities. He eventually negotiated a guilty plea and was convicted by a general court-martial and sentenced to confinement for 3 years. Following the court-martial, he was returned to the state of Washington to complete his sentence for the McDonald's robbery. He was returned to the Navy after satisfying his state sentence.

The sole question before this Court is whether appellant is entitled to credit for the time he spent in civilian confinement following his court-martial sentence and his return to Navy control.[1]

1. The issue, as granted, questions:

WHETHER THE COURT OF CRIMINAL APPEALS ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN IT CONCLUDED THAT THE COURT–MARTIAL SENTENCE TO CONFINEMENT DID NOT RUN FROM THE DATE IMPOSED, BUT RAN "CONSECUTIVELY" NOT "CONCURRENTLY" WITH HIS CIVILIAN SENTENCE TO CONFINEMENT.

The Court of Criminal Appeals concluded that appellant's military sentence to confinement ran consecutively to his civilian sentence; thus, it concluded he was not entitled to credit for the time served in a civilian institution following his court-martial sentence.

Article 57(e), Uniform Code of Military Justice, 10 USC § 857(e), which was enacted on October 23, 1992, and is in the Article entitled "Effective date of sentences," provides:

(e)(1) In any case in which a court-martial sentences a person referred to in paragraph (2) to confinement, the convening authority may postpone the service of the sentence to confinement, without the consent of that person, until after the person has been permanently released to the armed forces by a state or foreign country referred to in that paragraph.

Article 57(e) has been redesignated as Article 57a(b) by § 1123(a) of Pub.L. No. 104–106. That section substituted the word "defer" for the word "postpone" in the newly-designated provision. The legislative history was published in 1996 U.S.Code Cong. & Admin. News 379.

The convening authority attempted to defer appellant's sentence pursuant to this statutory authority. However, the statute was enacted after the date appellant had committed his offenses, so the statute was inapplicable to this case. Notwithstanding inapplicability of the statute, the Court of Criminal Appeals found solace in military common law and held that the military sentence ran consecutively to the state sentence. 43 MJ at 548.

We respectfully disagree. It is clear that Congress enacted Article 57(e) and thereafter re-enacted this provision in Article 57a(b) in order to give a convening authority the option of running the military sentence concurrently or consecutively.

The letter of transmittal from the Department of Defense explaining the rationale for the language in Article 57(e), now Article 57a(b)(1), states:

The second of the new provisions, article 57a(c), allows the convening authority to defer the running of a sentence to confinement when a state or foreign country has temporarily released the accused from its custody to allow the military to try the accused before a court-martial and the military is then obligated ... to return the accused to the sender state's custody after the court-martial is completed. Since article 57(b) provides that an accused's sentence to confinement begins to run upon the date it is adjudged, any sentence of confinement imposed by the court-martial would have to run concurrently with the accused's confinement by the sender state in the absence of this legislation. This would be the case regardless of the fact that the court-martial conviction was based on different crimes than those prosecuted by the sender state.

141 Cong.Rec. S5812 (daily ed. April 27, 1995).

The legislative history found in 1996 U.S.Code Cong. & Admin.News 379 states:

The Senate amendment contained a provision (sec. 527) that would allow for the deferment of confinement adjudged by courts-martial in two situations beyond those authorized under current law.... The other circumstance that would lead to deferment concerns individuals who are serving civilian confinement while they have a sentence pending that has been adjudged by a court-martial. The Senate amendment would defer the running of the court-martial sentence until completion of the civilian sentence, if the convening authority so directs.

The Court of Criminal Appeals decided the case on April 12, 1995, some 15 days before the Department of Defense letter of transmittal was published in the Congressional Record. The court's decision contains no reference to the position of the Department of Defense regarding the construction of Article 57(e) or Article 57a(b), even though the language found in the letter of transmittal obviously had been the product of much research and debate by the Joint Services

Committee of the Department of Defense General Counsel. Interestingly enough, the Government in its final brief offers no explanation for the clear and unambiguous language found in the letter of transmittal: "*[A]ny sentence of confinement imposed by the court-martial would have to run concurrently with the accused's confinement by the sender state in the absence of this legislation.*" (Emphasis added.)

The Government relies on our decision in *United States v. Bryant,* 12 USCMA 133, 30 CMR 133 (1961), for the proposition that Article 57(b) does not compel the conclusion that all court-martial sentences must automatically run from the date of adjudication. Indeed, in that case we said:

First, cumulative or consecutive sentences have long been a part of military law. Second, there is no indication Congress intended to engraft concurrent sentences into military justice when it enacted the Code. Rather Article 57(b) seems to have been designed to insure that an accused received credit against a sentence to confinement for time served from the date the court-martial adjudged sentence instead of some later date when punishment was approved by reviewing authority.

12 USCMA at 138, 30 CMR at 138.

*Bryant,* however, dealt with a second sentence by a court-martial for an offense which occurred after the first sentence took effect, and it was clearly limited by the concurring opinion of Chief Judge Quinn to those facts. Judge Ferguson dissented.

The Government likewise takes comfort in the Air Force decision in *United States v. Ellenson,* 19 MJ 605 (AFCMR 1984). However, *Ellenson* involved a construction of Article 14(b), UCMJ, 10 USC § 814(b), that makes it clear that delivery of a servicemember who is serving a sentence of confinement to civilian authorities "interrupts the execution of the sentence of the court-martial...." 19 MJ at 606. The Court of Military Review conceded that, on its face, the statute did not seem to cover the situation where *Ellenson,* like this appellant, was first convicted in a state court, then released to the military, and then returned to civilian authorities. Never-

theless, the Air Force court held that the military confinement ran consecutively to the civilian confinement. In so holding, the court was able to rely on paragraph 4(b), Air Force Regulation 125–30 (Nov. 1964), which provided:

A sentence to confinement adjudged by court-martial will not be served concurrently with any other sentence to confinement adjudged by a court-martial *or a civil court* (emphasis added).

19 MJ at 607.

The Court of Military Review in *Ellenson* had good reason to rely upon its regulation because in *Bryant* we had said:

Secretaries of Departments may promulgate rules and regulations, and they are presumptively valid unless 'arbitrary and unreasonable or contrary to or inconsistent with the Code. There is nothing arbitrary and unreasonable in requiring that multiple sentences be served consecutively, and the Code does not state that a sentence once started may not be interrupted by the misdeeds of the accused.

12 USCMA at 138, 30 CMR at 138.

Similarly, the Supreme Court has construed Article 57(b) as not being the sole determining factor in the computation of sentences:

Congress did not mention all contingencies which would prevent an accused from being credited with time served.

*Noyd v. Bond,* 395 U.S. 683, 691, 89 S.Ct. 1876, 1881, 23 L.Ed.2d 631, 641 (1969), quoting *United States v. Bryant, supra* at 137, 30 CMR at 137.

Thus, in the final analysis, Article 57(b) plainly states that the sentence of a court-martial to confinement runs from the date of adjudication. There are several exceptions to the plain rule stemming from "common sense," Supreme Court Writs of *Habeas Corpus,* or Air Force Regulations. We also have an amendment to Article 57 which at least the proponent of the amendment believed was necessary to "allow[ ] the convening authority to defer the running of a sentence to confinement." 141 Cong.Rec. S5812 (daily ed. April 27, 1995). Lastly, we have a convening authority who, in fact, did defer the

running of appellant's sentence to confinement, albeit he relied upon statutory authority which was inapplicable to appellant.

Based on these circumstances, the best we can say is that absent the amendment to Article 57, the clearest rule of law was that a Secretary of a Department could promulgate a regulation which determined when sentences would run concurrently or consecutively and that, at a minimum, misconduct which occurred after the first sentence to confinement began could result in a consecutive sentence.

There was no clear rule of law which applied to appellant's case. Article 14 made it clear that if a sentenced military member was turned over to civilian authorities, his sentence was interrupted during his subsequent confinement by the civilian authority. It did not speak to the situation at bar.

The amendment to Article 57 makes it clear that it is a convening authority's decision whether to defer the running of the sentence. Thus, in the absence of a convening authority's decision to defer, the military member's sentence would continue to run from the date of adjudication; it would not be automatically consecutive.

Therefore, first, Article 57(b) compels us to conclude that a member's sentence to confinement runs from the date it is adjudged. Second, it may be deferred by the convening authority under Article 57a(b). Third, if it is not deferred, then the sentence to confinement would run concurrently with any state sentence an accused was serving.

Because all parties here agree that the convening authority relied on Article 57(e) of the Uniform Code to defer appellant's sentence, it is clear that he acted *ultra vires.* Unlike the services in *Bryant* and *Ellenson,* the Navy had no regulations in place which contemplated deferment of sentence in this situation. Furthermore, the Government makes no compelling argument why this Court should not be bound by the construction of laws made by the Department of Defense in the transmittal of statutory changes. Accordingly, we hold that appellant's sentence to confinement began running on the date it was adjudged and was not tolled by his state confinement.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is set aside to the extent that it holds that appellant's confinement did not run while he was serving confinement in state custody. In all other respects, the decision below is affirmed. The record of trial is returned to the Judge Advocate General of the Navy for action consistent with this opinion.

Judges CRAWFORD, GIERKE, and FLAUM[2] concur.

SULLIVAN, Judge (concurring in part and in the result):

I concur with the majority's resolution of this case. I note, however, that the Department of Defense's transmittal letter concerning a statute which is inapplicable to appellant's case is clearly not binding on this Court. Nevertheless, the plain meaning of Article 57(b), Uniform Code of Military Justice, 10 USC § 857(b), permits concurrent sentences in this case.

---

**2.** Judge Joel M. Flaum of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).