# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39096**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Richard P. HAMRIC III**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 5 January 2018

———————————

*Military Judge:* Shaun S. Speranza.

*Approved sentence:* Dishonorable discharge, confinement for 9 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 16 March 2016 by GCM convened at Hill Air Force Base, Utah.

*For Appellant:* Major Allen S. Abrams, USAF.

*For Appellee:* Lieutenant Colonel G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge MINK and Judge DENNIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

JOHNSON, Senior Judge:

A general court-martial composed of a military judge convicted Appellant, consistent with his pleas, of one specification of failure to obey a lawful order,

one specification of signing a false official statement, one specification of possessing child pornography, one specification of distributing child pornography, and one specification of communicating indecent language, in violation of Articles 92, 107, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for nine years, total forfeiture of pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.[2]

Appellant raises two issues for our consideration on appeal: (1) Whether the conditions of Appellant's post-trial confinement constituted legal error and merit sentence relief; and (2) Whether Appellant's sentence is inappropriately severe.[3] We find no relief is warranted and affirm the findings and sentence.

## I. BACKGROUND

Appellant, an Air Force reservist, was on active duty orders at Hill Air Force Base (AFB), Utah, in June and July 2014. While on those orders, he uploaded a number of photos to the internet, including four photos of minor girls in clothed but sexually suggestive poses. A representative of the website where the photos were posted forwarded these four images to the National Center for Missing and Exploited Children (NCMEC). A NCMEC agent reviewed the files and found they matched NCMEC's database of known child victims. The source of the images was traced to Appellant, and NCMEC forwarded the case to the Air Force Office of Special Investigations (AFOSI).

In the meantime, Appellant began longer-term active duty orders at Hill AFB in October 2014. In a five-day period in late October 2014, Appellant sent 38 emails containing a total of 89 still images and one video of child pornography to 11 different individuals. During this same period, he received 15 emails containing a total of 47 still images and one video of child pornography. In

---

[1] The military judge found Appellant guilty of the specification of possessing child pornography by exceptions and substitutions with respect to the charged time frame, finding Appellant guilty of the substituted language and not guilty of the excepted language. Appellant pleaded not guilty to one specification of desertion and one specification of sexual abuse of a child under the age of 12 years, in violation of Articles 85 and 120b, UCMJ, 10 U.S.C. §§ 895, 920b. The convening authority withdrew and dismissed these specifications with prejudice in accordance with a pretrial agreement with Appellant.

[2] The convening authority's action credited Appellant 446 days for illegal pretrial confinement in accordance with a ruling by the military judge.

[3] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

addition, Appellant carried on an email conversation with an unnamed individual in which Appellant, *inter alia*, discussed trading child pornography, sought hardcore images involving children in the five-to-ten-year-old range, and inquired about paying for time with the other individual's young children—impliedly for sexual purposes.

At the beginning of November 2014, Appellant moved his family from Idaho into on-base housing at Hill AFB. Shortly thereafter, AFOSI agents executed a search authorization to seize Appellant's electronic media. Analysis of seized items revealed 110 images of child pornography in active space on an external hard drive and 166 images of child pornography that had been deleted from Appellant's cell phone.

On 6 November 2014, Appellant's commander issued him an order to have no contact with his wife and three children unless facilitated by his first sergeant or command. The order was renewed twice and remained continuously in effect until 15 September 2015. In spite of the order, Appellant moved back into his on-base home with his family on 11 February 2015. This disobedience remained undetected by Appellant's command when, on 22 July 2015, Appellant signed a leave authorization request, purportedly to go camping alone in Utah for approximately two weeks. In fact, he traveled with his family to Oregon and Washington. After Appellant did not check in with his supervisor during his leave as previously agreed, AFOSI traced him to central Washington. Appellant was placed in a deserter status and was arrested in Washington on 6 August 2015. Once returned to military control, Appellant was placed in pretrial confinement and held in civilian confinement in the Weber County (Utah) Confinement Facility (WCCF) until his trial.

## II. DISCUSSION

### A. Post-Trial Confinement Conditions

#### 1. Additional Background

Appellant entered into a pretrial agreement with the convening authority that, *inter alia*, preserved his right to file a motion with a military judge for relief for alleged unlawful pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813. After accepting Appellant's pleas and making his findings, the military judge received evidence and heard argument on the Defense's Article 13 motion. The military judge issued his written ruling on the motion on 7 April 2014, approximately three weeks after the trial. His pertinent findings of fact, which are not challenged by the parties on appeal and are well-supported by the record, included, *inter alia*, the following:

[Appellant] was properly ordered into pretrial confinement on 06 August 2015 . . . and classified as a mandatory maximum custody prisoner in accordance [with] AFI [Air Force Instruction] 31-105. [Appellant] was made aware of all requirements and procedures, to include how to file a grievance through Air Force channels.

[Appellant] was in-processed as a pretrial detainee at WCCF on 12 August 2015. [Appellant] was made aware of all requirements and procedures, to include how to file a grievance through WCCF officials. WCCF conducted an assessment of [Appellant] in order to determine his classification. WCCF's classification assessment relies upon objective criteria and is the best way for administrators to manage each detainee/inmate. [Appellant's] initial assessment resulted in him being classified as a Level 4 detainee/inmate. However, this classification was overridden and [Appellant] was reclassified as a Level 2 detainee/inmate because WCCF administrators determined Levels 1 and 2 were the only classifications at which WCCF could meet the terms of its agreement [with the Air Force]. No other individual assessments or potential accommodations/deviations were attempted or apparently considered.

. . .

[Appellant] remained in a maximum security block as a Level 2 detainee/inmate throughout his pretrial confinement at WCCF. Accordingly, all Level 2 restrictions were imposed upon him. In general, [Appellant] was segregated inside his cell at all times except for 2 hours every other day. While being transferred to Hill AFB or moved within the facility, [Appellant] was physically restrained.

. . .

[Appellant] filed three Prisoner Requests with 75 SFS [75th Security Forces Squadron] outlining various complaints and issues, to include a specific objection to being commingled with another airman in a holding cell for a short period of time . . . [Appellant] filed another Prisoner Request with 75 SFS requesting extra toilet paper to accommodate an alleged medical condition. Each of these requests, or complaints/grievances, was addressed and resolved in a reasonable manner by the appropriate authorities.

[ ] While in pretrial confinement at WCCF, [Appellant] was provided sufficient, reasonable medical care, clothing, footwear, and meals. Although [Appellant], like other WCCF detainees/inmates, had to utilize a video teleconference for visits, he was not deprived any visitation privileges. Members of [Appellant's] unit visited him on numerous occasions. [Appellant] also received other visitors . . . [Appellant's] pretrial confinement conditions did not deprive him access to his attorneys or impact his ability to adequately prepare his defense.

. . .

Air Force and WCCF officials did not intend to punish [Appellant].

The military judge concluded that, although there was no intent to punish Appellant, nevertheless:

Classifying [Appellant] as a Level 2 inmate without individual consideration of his status as a pretrial detainee or the excessive conditions that would be placed upon him in order to guarantee compliance with the terms of an agreement, subjected [Appellant] to unduly rigorous circumstances that were more than necessary to ensure his presence at trial.

Accordingly, the military judge awarded Appellant two-for-one credit for each of the 223 days he spent in pretrial confinement, a total of 446 days of additional confinement credit.

After Appellant's trial, he was returned to confinement as a Level 2 inmate at WCCF, where he experienced the same conditions as he did during his pretrial confinement. He remained in post-trial confinement at WCCF for 43 days until transferred to a military confinement facility.

### 2. Law

Article 12, UCMJ, provides: "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." 10 U.S.C. § 812. Article 12 applies to military members held in civilian state or federal confinement facilities. *United States v. McPherson*, 73 M.J. 393, 394 (C.A.A.F. 2014).

Article 58, UCMJ, provides that military members serving a sentence to confinement may be confined in a civilian facility, but persons so confined "are subject to the same discipline and treatment as persons confined or committed by the courts of the United States." 10 U.S.C. § 858(a). "Military confinees

can—and must—receive treatment equal to civilians confined in the same institution, while being confined separately from foreign nationals." *McPherson*, 73 M.J. at 396.

"Article 13, UCMJ, prohibits two things: (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial." *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005).

"A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). Absent some unusual or egregious circumstance, an appellant must demonstrate he has exhausted the prisoner grievance system and his right to petition his command for relief under Article 138, UCMJ. *Id.* at 471.

"Both the Eighth Amendment[4] and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55 . . . is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (footnote inserted). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ.

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (internal quotation marks and citation omitted). Under our broad authority and mandate under Article 66(c), UCMJ, to approve only so much of the sentence as we find appropriate in law and fact, we may grant sentence relief due to an appellant's post-trial treatment even in the absence of an Eighth Amendment or Article 55 violation. *Gay*, 74 M.J. at 742–43; *see United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002).

---

[4] U.S. CONST. amend. VIII.

### 3. Analysis

Appellant contends his post-trial confinement at WCCF, under the same conditions the military judge found to warrant additional confinement credit for violation of Article 13, UCMJ, violated Article 58's requirement that he be treated equally with civilian inmates housed in the same facility.[5] In particular, he points to his continued confinement as a Level 2 inmate, despite his initial pretrial classification by WCCF as a Level 4 inmate. He also emphasizes an unspecified gastrointestinal medical issue which developed after his trial and which he asserts was aggravated by his conditions of confinement.

In response, the Government submitted declarations from Appellant's commander, the 75 SFS liaison with WCCF, and the WCCF liaison with 75 SFS and Hill AFB. Based on their declarations, the Government contends Appellant submitted no formal post-trial grievances related to his confinement, and therefore failed to exhaust his administrative remedies. The Government further notes Appellant's description of his medical issues is very vague, and to the extent he requested medical care it was provided to him.

As an initial matter, as the Government notes, the specific legal basis upon which the military judge granted relief for illegal *pretrial* punishment under Article 13, UCMJ, is inapplicable to his *post-trial* confinement. The military judge found Appellant's Level 2 pretrial confinement conditions were more rigorous than necessary to ensure his presence at trial, in violation of Article 13. *See King*, 61 M.J. at 227. Appellant's post-conviction confinement serves fundamentally different purposes, including punishment of Appellant for his crimes as an element of his adjudged and approved sentence.

Appellant acknowledges the distinction, but essentially contends the military judge's findings and conclusions in applying Article 13 in a pretrial context are relevant to the Government's obligation to obey Article 58 during his post-trial confinement. According to Appellant, his post-trial return to Level 2 confinement at WCCF violates the equal treatment with civilian confinees guaranteed by Article 58. *See McPherson*, 73 M.J. at 396. Appellant argues that avoiding an Article 12 violation is, by itself, insufficient justification for placing a military inmate in solitary confinement. *See id.* However, for the following reasons, we find Appellant has not demonstrated his entitlement to relief.

First, Appellant has failed to show he exhausted his administrative remedies. *See Wise*, 64 M.J. at 471 (absent "unusual or egregious" circumstances, a prisoner must exhaust the prisoner grievance system and petition for relief under Article 138, UCMJ, before seeking a judicial remedy). Appellant does

---

[5] Appellant raises no issue regarding his post-WCCF confinement in military correctional facilities.

not assert he filed a grievance or sought relief under Article 138 during his post-trial confinement at WCCF. The declarations provided by the Government confirm that he did not. The military judge's findings of fact and Appellant's formal pretrial complaints establish that he knew how to seek redress through WCCF and Air Force channels. Appellant explains that when he expressed concerns to 75 SFS personnel and his command, he was led to believe he would be transferred out of WCCF soon and was told to be patient. Nevertheless, we do not find this to be an unusual or egregious circumstance that overrides his decision not to pursue an administrative remedy.

Appellant argues his pretrial motion for relief for illegal pretrial punishment put the Government on notice that he objected to the conditions of his confinement. We are not persuaded. Again, his pretrial motion for relief was based on Article 13, UCMJ, which was inapplicable to his post-trial confinement. The military judge granted relief on the basis of Article 13's prohibition on pretrial punishment, which did not apply once he began serving his post-trial confinement as an element of the punishment imposed by his sentence.

Second, Appellant has not demonstrated that his post-trial confinement status at WCCF, as opposed to his pretrial confinement status, would have been other than Level 2 but for the terms of the agreement between WCCF and the Air Force. Appellant's argument presumes he would have qualified for Level 4 status, but he has presented nothing to indicate that his convictions, sentence, or any other post-trial circumstance would have qualified him for a less restrictive *post-trial* classification. In contrast, the 75 SFS confinement liaison asserts his convictions classified him as a maximum security inmate according to applicable Department of Defense guidance. Thus Appellant's post-trial housing level at WCCF was appropriate to his post-trial custody grade, as determined by the military. We recognize that his classification under WCCF procedures is a distinct question, but Appellant has not demonstrated he was misclassified for his post-trial confinement.

Third, Appellant has neither alleged nor established that he was treated any differently from civilian Level 2 inmates held at WCCF. On the contrary, the declarations provided by the Government indicate he was treated in accordance with WCCF policies applicable to the rest of the Level 2 population.

With respect to the unspecified gastrointestinal disorder Appellant asserts worsened during his post-trial confinement at WCCF, Appellant has not explained how the specific conditions of his confinement caused or exacerbated his condition. He has not demonstrated how his reclassification to Level 4 status, or any other classification, would have ameliorated his condition. The record does establish that he filed no post-trial grievance related to this condition, and that Air Force authorities did arrange for him to be seen by medical providers at Hill AFB in March 2016 when he requested it.

Having determined no sentence relief is warranted by Article 58, we have also considered whether Appellant is entitled to relief under the Eighth Amendment or Article 55, UCMJ, for cruel or unusual punishment during his post-trial confinement. We find he is not. Based on the record before us, we find no serious act or omission resulting in the denial of necessities, no culpable state of mind on the part of authorities amounting to deliberate indifference to Appellant's health and safety, and no exhaustion of administrative remedies. *See Lovett*, 63 M.J. at 215.

Finally, we have considered whether the conditions of Appellant's post-trial confinement warrant sentence relief under our Article 66(c) authority even in the absence of cruel or unusual punishment. *See Gay*, 74 M.J. at 742–43. We find they do not.

## B. Sentence Appropriateness

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Appellant personally asserts his sentence is inappropriately severe and merits reduction. He contends his crimes are not so severe that, when balanced with his duty history and support from his family and friends, a term of nine years in confinement in conjunction with a dishonorable discharge is appropriate. We are not persuaded.

Appellant pleaded guilty to possessing and distributing numerous images of child pornography, most of them depicting girls who appear to be of pre-teenage years. He engaged in an online conversation expressing an interest in hardcore images of girls in the five-to-ten-year-old range, and discussed, albeit briefly and perhaps facetiously, paying for time with another adult's eight-year-old daughter for sexual purposes. We note Appellant entered a pretrial agreement that the convening authority would approve no confinement in excess of 15 years. The maximum imposable term of confinement for Appellant's crimes was 36 years. The military judge, having reviewed the evidence and received Appellant's unsworn statements, imposed a term of nine years in confinement. Having given individualized consideration to Appellant, the nature

and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we find his sentence is not inappropriately severe.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[6] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Katie Potter*

KATHLEEN M. POTTER
Acting Clerk of the Court

---

[6] We note an error in the promulgating order with respect to Charge IV, where the charged article is incorrectly identified as Article "120(b)" rather than "120b." We direct the publication of a corrected court-martial order to remedy this error.